IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ANGELA H.,**[1]

               Plaintiff,

v.

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,**

               Defendant.

_____

**Civ. No. 6:22-cv-00328-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

      Plaintiff Angela H. brings this action for judicial review of a final decision of the
Commissioner of Social Security ("Commissioner") denying her application for disability
insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of
the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

      The Commissioner concedes that the Administrative Law Judge ("ALJ") erred but argues
the appropriate remedy is to remand for further proceedings. Because the record contains
outstanding issues and raises serious doubt as to whether Plaintiff is disabled, the
Commissioner's decision is REVERSED and this case is REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the
non-governmental party in this case.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB and SSI on July 14, 2016, alleging disability since November 13, 2014. Tr. 958. Her claim was denied initially and upon reconsideration. *Id.* Plaintiff amended her alleged onset date to July 1, 2016 and appeared before an ALJ on December 6, 2018. *Id.* The ALJ denied Plaintiff's claim by written decision and the Appeals Council denied review, rendering the ALJ's decision final. Tr. 955–79, 980–85. Plaintiff sought review of the ALJ's decision in federal court, and the parties agreed to a stipulated remand for further proceedings. Tr. 986–90. Plaintiff appeared before a second ALJ on October 4, 2021. Tr. 898. The second ALJ denied Plaintiff's claim by written decision on November 1, 2021. Tr. 895–910. Plaintiff now seeks judicial review of the ALJ's decision denying benefits.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (reaffirming the substantial evidence standard in social security cases). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may

not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## <u>DISCUSSION</u>

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). The burden of proof rests on the claimant for steps one through four, and on the Commissioner for step five. *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). At step five, the Commissioner's burden is to demonstrate that the claimant can make an adjustment to other work existing in significant numbers in the national economy after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is considered disabled. *Id.*

The ALJ here found that Plaintiff had the following severe impairments: cervical degenerative disc disease; bilateral shoulder tendinopathy; status post right carpal tunnel and cubital tunnel release; status-post concussion; obesity; PTSD; unspecified depressive disorder; and somatic symptom disorder. Tr. 901. The ALJ next construed Plaintiff's RFC, limiting Plaintiff to

> light work with lifting and carrying 20 pounds occasionally and 10 pounds frequently, sitting for six hours of an eighthour workday, standing or walk in combination for six hours of an eight-hour workday. She can push/pull as much as she can lift/carry. She can frequently operate hand controls with the bilateral hands. She can occasionally reach overhead bilaterally. She can frequently reach in all other directions bilaterally. The claimant can frequently feel with the bilateral hands. The claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. She can never work at unprotected heights or around moving mechanical parts, and never work around

dust, odors, fumes and pulmonary irritants. Time off task includes in addition to normal breaks, off task five percent of an eight-hour workday. The claimant can perform simple, routine tasks at reasoning level two or less with simple work-related decisions. She can occasionally interact with supervisors, coworkers, and the public.

Tr. 904. After considering Plaintiff's age, education, work experience, and RFC, the ALJ found there are jobs existing in significant numbers in the national economy that Plaintiff could perform. Tr. 909. The ALJ therefore found Plaintiff not disabled. Tr. 910.

Plaintiff argues the ALJ erred in three ways: (1) improperly discrediting Plaintiff's symptom testimony; (2) failing to consider lay witness testimony; and (3) failing to include all of Plaintiff's functional limitations in the hypotheticals posed to the vocational expert ("VE"). Pl.'s Br. 3–16, ECF No. 10. Specifically, Plaintiff asserts the ALJ failed to address Plaintiff's testimony that she needs to lie down frequently throughout the day. The Commissioner concedes that the ALJ erred, but argues remand for further proceedings is the appropriate remedy based on conflicts in the record and serious doubt as to whether Plaintiff is disabled. Def.'s Br. 2, ECF No. 15.

Generally, "when an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)). However, an award of benefits can be directed "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and

(3) if the improperly discredited evidence were credited as true, the ALJ would be
required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if these three factors are met, the

Court must remand for further proceedings when "an evaluation of the record as a whole creates

serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Plaintiff claims the credit-as-true factors are met here. Namely, the ALJ failed to address

Plaintiff's symptom testimony that she "needs to lie down to rest frequently." Pl.'s Br. 3.

Crediting that testimony as true, Plaintiff contends the ALJ would be required to find her

disabled based on VE testimony that the hypothetical need to lie down would preclude all work.

*Id.* at 20. The Court, however, finds that evaluation of the record as whole raises serious doubt as

to whether Plaintiff is disabled.

Plaintiff testified to debilitating pain in her neck, shoulders, back, and arms, as well as

migraines and cognitive difficulties that affect her ability to focus. Tr. 57–58, 927–29. Plaintiff

injured her right shoulder at work in 2009. Tr. 66. She testified that anytime she has to lift or

move her right arm, it triggers pain and numbness in her shoulders and neck. Tr. 53, 57. She

explained that being in pain causes her to have anxiety and headaches, which then leads to her

having a hard time focusing. Tr. 57. Plaintiff testified to having multiple brain injuries, which

caused cognitive deficits making it very difficult to focus and have conversation of any kind. Tr.

60, 64, 67–68. She has trouble focusing while grocery shopping due to background noise. Tr. 63.

Plaintiff explained she cannot handle too much conversation or activity before getting a

headache and having to lay down to rest or nap. Tr. 60, 64. Tr. 61. For example, although

Plaintiff was able to start her own baking company, she explained that she still has to stop

frequently to rest her arms or because she gets distracted by conversations with others. Tr. 930–

32. Plaintiff testified that low levels of activity, such as taking the dog to the park, as well as too

much conversation and "brain stimulation" cause her to lie down at least a couple times a day. Tr. 64–65. Additionally, Plaintiff testified to getting headaches and migraines frequently, which require her to lie down. Tr. 65–66, 932–34.

The ALJ discounted Plaintiff's symptom testimony as "inconsistent with the objective evidence, the largely conservative treatment, and repetitive examinations that either show no deficits or include comments on how findings are not consistent with demonstrated functioning." Tr. 905. The ALJ noted imaging showing mild spondylosis and stenosis concerning Plaintiff's spine, tendinopathy in the shoulders, and mild carpal tunnel syndrome that appeared to improve after release surgery was performed. Tr. 906. The ALJ referenced two CT scans and a brain MRI that found "no acute intracranial process." *Id.* He cited "multiple points at which treating and examining sources note that [Plaintiff's] subjective complaints are inconsistent with objective findings." *Id.* As to Plaintiff's mental impairments, the ALJ found "no evidence of ongoing engagement in typical treatment beyond medication." Tr. 907.

Though the ALJ failed to specifically address Plaintiff's testimony concerning her need to lie down frequently as a result of her impairments, the Court finds the record creates serious doubt regarding the validity of that testimony.

Throughout the record, Plaintiff attributes much of her physical pain symptoms and cognitive dysfunction to having suffered multiple brain injuries. However, several treatment providers have been unable to determine the cause of her alleged symptoms. For example, in December 2013, Plaintiff complained of lasting problems with her memory and ability to focus after she sustained a concussion in 2012. Tr. 392. But her brain MRI after the 2012 concussion was normal and showed no brain injury. *Id.* Her doctor stated she believed that Plaintiff "sustained a mild concussion, however emotional and psychological factors may be impairing

her recovery." Tr. 394. And although Plaintiff scored very low on a cognitive screening assessment in 2014, a neuropsychological evaluation soon after showed evidence of purposeful lack of effort by Plaintiff. Tr. 407–11, 413–29. The doctor noted Plaintiff was "poorly motivated" during the exam and found "clear evidence of exaggeration." Tr. 427. He explained that "the record did not provide evidence of objective cognitive impairment" and further ruled out post-concussive syndrome as an explanation for her prolonged symptoms. Tr. 442–43. A separate medical examination in 2014 similarly showed that Plaintiff's poor testing regarding the functionality of her right arm was due to poor effort by Plaintiff. Tr. 438–40. The doctor explained, "the observation of give-way weakness on strength testing, and a non-dermatomal pattern of sensory loss does identify a functional, elaborated element to the examination, suggesting that psychological factors may contribute to her current disability." Tr. 440.

Plaintiff was seen for complaints of chronic neck pain in March 2015, but her physical examination was "rather unremarkable except for painful palpation." Tr. 601. In August 2015, Claudia Lake, Psy.D., diagnosed Plaintiff with somatic symptom disorder, explaining that Plaintiff had been overly fixated on the mild concussion she sustained in 2012. Tr. 467. Regarding Plaintiff's ability for abstract thinking, Dr. Lake said Plaintiff was "rather lazy in some of her responses and it appeared that she did not put forth significant effort in responding to these questions." *Id.* Dr. Lake further opined that Plaintiff's

> ongoing complaints of pain and disability are not supported by the medical and psychological testing. [Plaintiff] is either exaggerating her symptoms or she actually believes she has these pain and neurological issues and takes on the role of being a disabled or sick person, which is often reinforced by others including her friend who brought her to the appointment.

*Id.*

Plaintiff claims she sustained another debilitating head injury in 2016 that worsened her neck and shoulder pain but, again, her CT scans and brain MRI were normal. Tr. 501, 554, 787. Her doctor indicated she likely did not sustain a concussion but instead a muscular injury that could be treated with physical therapy. Tr. 554. In November 2017, Plaintiff's doctor indicated that Plaintiff had "neck pain and some symptoms suggestive of spinal stenosis, although on examination I do not think there are any significant findings." Tr. 787. Plaintiff was in a minor car accident in December 2017, and thereafter intermittently complained of lasting left shoulder and back pain in 2018 and 2019 as a result of the accident. Tr. 774, 877–80, 1267–68. In May 2019, Plaintiff's doctor stated, "I am not entirely sure why she is having such profound pain and the parethesias in her left upper extremity, given her normal c-spine MRI." Tr. 1272.

In sum, the inconsistencies between the reported severity of Plaintiff's symptoms and the findings of multiple medical providers raises serious doubt as to whether Plaintiff is disabled. Though the ALJ did not specifically address Plaintiff's testimony regarding her need to lie down frequently due to the alleged severity of her physical and mental symptoms, the record sufficiently raises doubt concerning the validity of that testimony.

Additionally, the Court finds that further proceedings are warranted for evaluation of Plaintiff's functional limitations. The state agency psychological consultants limited Plaintiff to "tasks requiring 1-2 steps" and "simple, routine tasks." Tr. 908. The ALJ gave these opinions "some weight," and found that additional mental functioning limitations were warranted. *Id.* But in construing Plaintiff's RFC, the ALJ failed, without explanation, to include a limitation for "tasks requiring 1-2 steps." *See* tr. 904. He then posed a hypothetical to the VE that only contained the limitation of "simple, work-related decisions." Tr. 946–49. The VE provided three potential jobs, all with reasoning levels of two. Tr. 947–50. The Commissioner concedes the

ALJ's error because jobs with a reasoning level of two are inconsistent with a limitation of "tasks requiring 1-2 steps." Def.'s Br. 4. Further proceedings are therefore necessary for the ALJ to either reevaluate the state agency opinions or include all of Plaintiff's limitations in the RFC and hypothetical to the VE.

Because the credit-as-true rule is not satisfied and the record raises serious doubt as to whether Plaintiff is disabled, this is not a rare instance in which remand for an award of benefits is appropriate.

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 9th day of August, 2023.

s/  Michael J. McShane
Michael J. McShane
United States District Judge